IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ERIC COOPER, individually and on behalf of  No. 3:18-cv-01561-HZ
all similarly situated,

        Plaintiff,  OPINION & ORDER

  v.

APPLIED INTEGRATED TECHNOLOGIES,
INC., a foreign corporation,

        Defendant.


David A. Schuck
Stephanie J. Brown
Karen A. Moore
SCHUCK LAW, LLC
208 East 25th Street
Vancouver, WA 98663

    Attorneys for Plaintiff

April Upchurch Fredrickson
Mark A. Crabtree
JACKSON LEWIS PC
200 Southwest Market Street, Suite 540
Portland, OR 97201

    Attorneys for Defendant

1- OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Eric Cooper brings this putative class action for failure to timely pay final wages as required by Or. Rev. Stat. ("ORS") § 652.140 against Defendant Applied Integrated Technologies, Inc. Defendant removed this case to federal court on the ground that it is preempted by § 301 of the Labor Management Relations Act ("LMRA"). Plaintiff now moves to remand this case to state court for lack of subject matter jurisdiction, and Defendant moves to dismiss this claim under Fed. R. Civ. P. 12(b)(6). The Court denies Plaintiff's Motion to Remand and grants Defendant's Motion to Dismiss.

## BACKGROUND

In 2015, Plaintiff was hired by Defendant to fulfill its obligations under a contract to supply the federal government with security officers. Notice of Removal Ex. 1 ("Compl.") at ¶¶ 10, 16, ECF 1-1. Plaintiff was subject to a Collective Bargaining Agreement ("CBA"). Compl. ¶ 12. The CBA contains provisions governing sick pay, vacation pay, and undisputed errors in payment. Redman Decl. Ex. A §§ 7.4, 8.5, 10.1, 10.4, ECF 7-1. Section 8.5 provides that up to eighty hours of sick leave may carry over into the following year, but otherwise "all unused hours will be paid at 100% of the earned amount within 30 days after the end of the government contract year." *Id.* at § 8.5. Similarly, "at the time of termination of employment," Defendant is to pay employees unpaid vacation hours that have vested but have not been used. *Id.* at § 10.4. Section 7.4 of the CBA also provides:

> In case of an undisputed error on the part of the Company as to an employee's pay, proper adjustment will be made within one (1) week for undisputed errors over $50 after the Company is provided a payroll discrepancy form identifying the error. All other such undisputed errors will be made on the next paycheck. Employees shall notify the Company of all errors on the part of the Company as to an employee's pay as soon as the error is noticed by the Employee. It is expressly agreed and understood that this Section 7.4 shall apply, without

limitation, to those instances where an employee has separated from employment and believes that his/her final pay was incorrect.

*Id.* at § 7.4. Any disagreements or disputes raised by the employee that arise "during the term of [the CBA] concerning the application, meaning or interpretation of an express term of [the CBA] or the employment relationship" are governed exclusively by the grievance and arbitration procedures set forth in the CBA. *Id.* at § 13.1.

On April 30, 2018, Defendant terminated Plaintiff's employment after it lost its federal contract. Compl. ¶¶ 17–19. Plaintiff alleges that more than 50 other individuals were similarly terminated by Defendant. Compl. ¶¶ 21–22. Plaintiff alleges Defendant violated state law when it made a late partial payment of final wages and failed to pay Plaintiff accrued sick and vacation leave until June 7, 2018, over a month after Plaintiff's employment ended. Compl. ¶¶ 26–30. As a result of this conduct, Plaintiff seeks statutory penalty wages of not less than $6,432.00 pursuant to ORS 652.150. Compl. ¶ 63.

## STANDARDS

### I. Motion to Remand

Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Any civil action may be removed to federal district court so long as original jurisdiction would lie in the court to which the case is removed").

"A motion to remand is the proper procedure for challenging removal." *Moore Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir.2009). Remand is governed by 28 U.S.C. § 1447(c) which provides, in pertinent part, that:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. § 1447(c). The removal statute is strictly construed and any doubt about the right of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). The presumption against removal jurisdiction means "the defendant always has the burden of establishing that removal is proper." *Id.*

## II. Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n, Inc. v. City & Cty. of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In other words, a complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

However, the court need not accept conclusory allegations as truthful. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (internal quotation marks, citation, and alterations omitted).

A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

## DISCUSSION

First, the Court must determine if it has jurisdiction over Plaintiff's state law claim. Second, it must ascertain whether Plaintiff's claim is subject to the mandatory grievance and arbitration procedures in the CBA. The Court finds that jurisdiction is proper as the outcome of Plaintiff's state law claim requires interpretation of the CBA. However, because Plaintiff failed to timely exhaust the grievance and arbitration procedures under the CBA, the Court grants Defendant's Motion to Dismiss.

### I. Subject Matter Jurisdiction

Federal question jurisdiction exists only if Plaintiff's state law claim substantially depends on an analysis of the CBA and is therefore preempted by § 301 of the LMRA. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 (9th Cir. 2000) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Generally, "'a case may not be removed to federal court on the basis of a federal defense, including a defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at

issue.'" *Id.* (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14 (1983)). There is, however, one important exception: the "complete preemption" doctrine. *Id.* at 1107. Under this doctrine, "the preemptive force of some statutes is so strong" that "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

Section 301 of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). In *Textile Workers v. Lincoln Mills of Alabama*, 353 U.S. 448, 451 (1957), the Supreme Court held that § 301 should be "understood . . . as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). "As a result of this broad federal mandate, the Supreme Court has explained, the 'preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.'" *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (quoting *Franchise Tax Bd.*, 463 U.S. at 23). Thus "any claim purportedly based on [a] pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393 (citing *Franchise Tax Bd.*, 463 U.S. at 24). "This is true even in some instances in which the plaintiffs have not alleged a breach of contract in their complaint, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it." *Burnside*, 491 F.3d at 1059.

However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Lueck*, 471 U.S. at 211.

Courts in the Ninth Circuit engage in a two-step inquiry to determine whether § 301 preempts state law claims:

> First, a court must determine whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and the analysis ends there. If the court determines that the right underlying the plaintiff's state law claim(s) exists independently of the CBA, it moves to the second step, asking whether the right is nevertheless substantially dependent on analysis of a collective-bargaining agreement. Where there is such substantial dependence, the state law claim is preempted by § 301. If there is not, then the claim can proceed under state law

*Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (citing *Burnside*, 491 F.3d at 1059) (internal citations, quotations, and brackets omitted). The parties do not dispute that this case involves a right conferred upon Plaintiff by Oregon law. Accordingly, the Court must decide whether—under the second step—Plaintiff's state law claim is "substantially dependent" on analysis of the CBA.

The outcome of step two turns on "whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not." *Burnside*, 491 F.3d at 1060 (internal citations omitted). "'[I]nterpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Kobold*, 832 F.3d at 1033 (citing *Balcorta*, 208 F.3d at 1108). "[O]nce a state law claim has been found substantially dependent upon analysis of a CBA under the second prong of *Burnside*, most often that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Id.* at 1034 (internal citations and quotations omitted).

Whether jurisdiction is proper therefore depends on whether the Court can resolve Plaintiff's claim without interpreting the CBA. The Court finds that it cannot.

The basis of Plaintiff's claim for penalties is Defendant's late payment of wages under ORS 652.140.[1] However, Oregon law also permits modification of the timing requirements of ORS 652.140 through a collective bargaining agreement: "[Section 652.140] does not apply to employment for which a collective bargaining agreement otherwise provides for the payment of wages upon termination of employment." ORS 652.140(5). The Oregon Supreme Court has held that "[t]he plain meaning of ORS 652.140(5) excuses an employer from the requirements found in other parts of ORS 652.140 . . . only if the CBA *affirmatively provides* different requirements regarding wage payments on termination of employment." *Smoldt v. Henkels & McCoy, Inc.*, 334 Or. 507, 511, 53 P.3d 443 (2002) (emphasis added). In other words, if the CBA here provides conflicting terms as to the payment of wages upon termination, then those terms—not state law—govern the parties' relationship.

In *Smoldt*, the plaintiff—a former employee of the defendant—sought to collect unpaid wages. *Id.* at 510. The plaintiff was hired to work under an employment contract at a rate of $14.48 per hour and quit after he was only paid $11.48 per hour pursuant a separate collective bargaining agreement. *Id.* at 509. The collective bargaining agreement did "not include requirements for payment of wages upon voluntary termination."[2] *Id.* at 511. Rather, it only

---

[1] ORS 652.140(1) provides: "When an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the discharge or termination." ORS 652.150 provides penalties for an employer's failure to comply with ORS 652.140.

[2] As described by the Oregon Court of Appeals, the relevant section of the collective bargaining agreement provided: "Upon being laid off, the employee or employees shall be paid all money due them. If an employee is fired, he shall be paid all money due him; and in the event the employee is not paid all money due him, he shall receive pay at the regular rate until payment is made, not to exceed eight hours per day Monday through Friday, excluding Saturday, Sunday and holidays. If an employee is terminated because of incompetence, the Employer shall so notify the involved employee in writing. When an employee is terminated for any reason, the Employer shall complete a termination report furnished by the Local Union—one copy for the Employee, one copy for the Employer, and one copy for the Local Union." *Smoldt v. Henkels &*

8- OPINION & ORDER

"include[d] provisions related to layoffs and involuntary termination, but [did] not include provisions related to voluntary termination by an employee." *Id.* at 512. In addition, the employee there was seeking to enforce his rights under an individual employment contract, not the collective bargaining agreement. *Id.* Thus, the Oregon Supreme Court held that the state law wage claim did not require the interpretation of the collective bargaining agreement. *Id.* At most, it required the trial court to refer to the agreement to understand the rate disparity underlying the plaintiff's claim. *Id.* Accordingly, ORS 625.140(5) was inapplicable, and the case was not preempted by § 301.

By contrast, in *Cramblit v. Diamond B Constructors*, the Oregon Court of Appeals determined that a state law claim for unpaid wages required interpretation of the collective bargaining agreement and was therefore preempted by federal law. 197 Or.App. 358, 105 P.3d 906 (2005). The plaintiff was seeking payment for travel time and mileage after he was terminated under ORS 652.140(1). *Id.* at 360. There, too, the issue on appeal was whether the plaintiff's claim for wages was properly governed by the Oregon statute or the collective bargaining agreement under the exception in ORS 652.140(5). *Id.* at 364. The union agreement stated that "[w]hen an employee is laid off or discharged, he shall be paid in full for all hours up to the time he receives pay." *Id.* It went on to provide details as to how the employee should go about calculating and obtaining his final paycheck. *Id.* The Court noted that the agreement differed from the statutory requirements "with respect to both timeliness of payment and mode of delivery." *Id.* at 365. For example, "[t]he statute specifie[d] that wages earned and unpaid at the time of termination must be paid before the end of the next business day, while the agreement specifie[d] that the employee must be paid 'when an employee is laid off or discharged.'" *Id.*

---

*McCoy, Inc.*, 168 Or. App. 657, 663–64, 7 P.3d 638 (2000), *rev'd*, 334 Or. 507, 53 P.3d 443 (2002).

9- OPINION & ORDER

Because of the affirmative differences between the statute's requirements and the agreement's requirements, the court determined that ORS 652.140(5) did not apply and the defendant could not incur the penalty specified in ORS 652.150. *Id.* The Court of Appeals further noted that if it had found the agreement was ambiguous as to the payment of travel time and mileage, the court would have to construe the agreement, "a judicial task that falls exclusively within federal jurisdiction." *Id.* at 366.

The present case falls somewhere between *Smoldt* and *Cramblit*. Here, it is unclear whether the CBA provides different requirements for the final payment of vacation and sick leave than those listed in the statute. ORS 652.140 requires payment of final wages by the end of the next business day. By contrast, § 10.4 may provide an even more stringent timeline for final payment of some of the wages at issue here: "*At the time of termination of employment*, employees shall be paid for unpaid vacation hours that have been vested but not used." Redman Decl. Ex. A § 10.4 (emphasis added). Section 7.4 also provides a mechanism for an employee to dispute their final pay and a timeline for the employer to correct any undisputed errors as to an employee's pay. *Id.* at § 7.4. Similarly, though it does not reference termination specifically, § 8.5 states "employees shall receive payment for unused personal leave accrued during the contract year and shall receive such payment on or before the end of the Contract year." *Id.* at § 8.5. It goes on to provide "unused [sick days] will be paid at 100% of the earned amount within 30 days after the end of the government contract year." *Id*.

Accordingly, the CBA may affirmatively provide different requirements for the payment of final wages than ORS 652.140. Because Plaintiff's state law claim depends on the meaning of the CBA terms at issue, the "evaluation of the state law claim is inextricably intertwined with consideration of the terms of the labor contract." *Firestone v. S. Calif. Gas Co.*, 219 F.3d 1063,

1065 (9th Cir. 2000) (internal brackets and quotations omitted); *see also Vera v. Sacks & Co.*, 335 F.3d 109, 115 (2d Cir. 2003) ("[W]e must interpret the CBA to determine whether it embodies an agreement between the parties to alter the common law rule regarding when commissions are earned."). The Court therefore has jurisdiction over this case under § 301 of the LMRA.

## III.     Dismissal

Having concluded that subject matter jurisdiction is proper, the Court now must consider whether Plaintiff's claim should be dismissed. Defendant argues that Plaintiff's claim should be dismissed because he failed to exhaust the grievance and arbitration provisions in the CBA before filing suit. The Court agrees.

Generally, "interpretation of collective-bargaining agreement [is] firmly in the arbitral realm; judges can determine question of state law involving labor-management relations only if such questions do not require construing collective-bargaining agreements." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988). Section 301 has preemptive effect "to authorize the development of federal common-law rules of decision, in large part to assure that agreements to arbitrate grievances [are] enforced, regardless of the vagaries of state law and lingering hostility toward extrajudicial dispute resolution." *Livadas v. Bradshaw*, 512 U.S. 107, 121–22 (1994). "The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987).

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to

> ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.
>
> The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.

*Id.* at 36–37 (quoting *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960)). Thus, "once a state law claim has been found substantially dependent upon analysis of a CBA under the second prong of *Burnside*, most often 'that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law.'"[3] *Kobold*, 832 F.3d at 1034 (quoting *Lueck*, 471 U.S. at 220).

In *Kobold*, the plaintiff—a nurse employed by the defendant—brought a suit against the defendant for unpaid wages under Oregon law. *Id.* at 1035. Specifically, the plaintiff contended that she was owed premium pay for certain extra shifts. *Id.* The Ninth Circuit indicated that this state law claim for unpaid wages was substantially dependent on an analysis of a disputed provision of the collective bargaining agreement, and the court would have to consult the agreement to determine which shifts qualified for premium pay.[4] *Id.* at 1036. Thus, the plaintiff's claims were to some degree preempted by § 301. *Id.*

---

[3] Plaintiff may also avoid the exhaustion requirement if he shows that "the union representing the employee in the grievance/arbitration procedure . . . breach[ed] its duty of fair representation." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 986–87 (9th Cir. 2007). However, Plaintiff has made no such allegation here.

[4] The agreement at issue only allowed premium pay where the extra shift was not the result of "a change of schedule agreed upon by the Medical Center and nurse." *Kobold*, 832 F.3d at 1036. The defendant argued that she was not entitled to premium pay because she agreed to work the extra shifts with notice that she would be paid the regular rate. *Id.* The plaintiff, by contrast, argued that such a reading would undermine the premium rate provision and allow the defendant to never pay the extra shift premium. *Id.* The circuit court emphasized that the agreement neither explained what constituted a change in schedule nor how an agreement was to be made. *Id.* Thus,

The court then proceeded to find that the plaintiff could not pursue her claims. *Id.* The agreement had a mandatory grievance procedure for "problems arising in connection with the application or interpretation of the Agreement." *Id.* at 1035, 1036. It also "authoriz[ed] grievances to be filed up to 45 days following the occurrence of the matter being grieved." *Id.* at 1035. Because the plaintiff had not exhausted and could not exhaust her contractual remedies for those extra shifts worked outside of the 45-day period, she could not pursue any alleged violation of the agreement. *Id.* at 1036–37.

> Here, the grievance and arbitration provision at issue provides:
>
> A grievance shall mean a disagreement or dispute raised by the Union or an employee which arises during the term of this Agreement *concerning the application, meaning or interpretation of an express provision of this Agreement* or the employment relationship between the Company and employee, including but not limited to claims of unlawful employment discrimination as set forth in Article 5 of this agreement.
>
> Except as otherwise stated in this Agreement, the procedures set forth in this Article shall be the sole and exclusive remedy for any grievance asserted by the Union or an employee. *Grievances involving the discharge or suspension of an employee will begin at Step Three*.

Redman Decl. Ex. A § 13.1 (emphasis added). The CBA then describes a three-step grievance procedure. Step one requires the employee or Union representative to present the grievance in writing to their direct supervisor within ten days of its occurrence. *Id.* If the grievance is not settled or the supervisor does not respond within ten days, then at step two the employee or Union representative must submit a grievance in writing to Defendant's program manager within ten days of the date the supervisor responded or should have responded. *Id.* At step three—the first step for those grievances involving discharge or suspension—the Union must present the grievance to the Director of Human Resources within 10 calendar days of the response date of

---

to determine the amount owed under plaintiff's state law claims, the court would have to interpret the meaning of these terms. *Id.*

the program manager. *Id.* Failure to comply with the timing requirements laid out in steps one, two, and three results in waiver or settlement of the grievance. *Id.* Where the grievance is not settled at Step 3, the Union may—within ten days after receipt of the response from the Director of Human Resources—seek binding arbitration. *Id.* at § 13.2

      The Court finds that this case is subject to the grievance and arbitration procedure outlined in the CBA. The grievance procedure is the exclusive remedy "concerning the application, meaning or interpretation of an express provision of [the CBA]." *Id.* The present case involves the application and interpretation of the undisputed error, vacation pay, and sick leave provisions of the CBA. Accordingly, Plaintiff is required to exhaust the grievance and arbitration remedies provided in the CBA in order to maintain a § 301 claim. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983) ("Ordinarily, . . . an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement."). As Plaintiff has made no allegation nor presented any evidence that he has exhausted the grievance and arbitration procedures in the CBA, and the time has passed for him to do so, Plaintiff cannot pursue a claim under § 301. Accordingly, Plaintiff's claim must be dismissed.

///
///
///
///
///
///
///

## CONCLUSION

The Court DENIES Plaintiff's Motion to Remand [10] and GRANTS Defendant's Motion to Dismiss [6]. This case is dismissed with prejudice.

IT IS SO ORDERED.

Dated this 4th day of March, 2019.

_____
MARCO A. HERNÁNDEZ
United States District Judge